The Full Commission has reviewed the prior Opinion and Award based upon plaintiff's assignments of error, the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. However, pursuant to its authority under G.S. §97-85, the Full Commission has modified the Deputy Commissioner's decision and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The carrier on the risk at the time of plaintiff's accident is Cigna Property Casualty Company.
2. The employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act. An employment relationship existed between the employer and the employee on 6 September 1994, the date of the subject accident.
3. Plaintiff's average weekly wage was $328.50, yielding a compensation rate of $219.01 per week.
4. The parties have stipulated to a set of medical records, medical bills, and certain formal discovery documents totaling 174 pages which were submitted and entered into evidence at the time of the hearing.
***********
Based upon the evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of hearing on 20 May 1998, plaintiff was forty-seven years old. Plaintiff is dyslexic and did not graduate from high school.
2. Plaintiff's employment history includes the following: housekeeping positions; working as a nurse's aide, and; working as a laborer in the furniture manufacturing industry since approximately 1989.
3. While working for defendant-employer on 6 September 1994, plaintiff sustained an injury to her right foot. Plaintiff's position at the time of this incident was as a hand sander in the finishing department at defendant-employer's Spruce Pine, North Carolina plant. Plaintiff was eventually diagnosed as having developed Reflex Sympathetic Dystrophy (RSD) of her right lower extremity as the result of this incident.
4. An Industrial Commission Form 21 Agreement for Compensation was entered into by the parties and approved by the Commission on 1 December 1994. Pursuant to this Form 21, plaintiff was to be paid temporary total disability compensation at the rate of $219.01 per week for necessary weeks.
5. On 19 January 1995, plaintiff returned to work for defendant-employer in her former position as a hand sander. As of the hearing before the Deputy Commissioner on 20 May 1994, plaintiff continued working as a hand sander with defendant-employer. In this position, plaintiff generally works with drawers from pieces of furniture. On occasion, plaintiff pulls drawers from furniture units and places some on a roller bed for sanding. The roller beds or conveyors move at a rate between four to eight (4-8) inches per minute. When taller units pass down the sanding line, plaintiff sands the lower portions of the furniture while another worker sands the upper portions.
6. At the time of the hearing on 20 May 1998, plaintiff's husband, Mr. James Harrison, also worked with defendant-employer and had done so for approximately five (5) years. Mr. Harrison has worked at and observed the hand sander job being performed at Henredon Furniture and Lineage Furniture and testified for these other employers, the duties of the hand sander included having to climb to perform the required work. However, Mr. Harrison has not worked at Henredon since 1986 and has not worked at Lineage since 1992 and has made no personal observations of the job requirements for these employers since those dates.
7. Plaintiff is not required to climb in order to perform her current work as a hand sander at defendant-employer. This is the only modification made to the hand sander job plaintiff continued to perform as of the 20 May 1998 hearing date. However, this modification was made prior to the 6 September 1994 incident and was based on plaintiff's expressed fear of heights.
8. Mr. James Sheehan is defendant-employer's Human Resources Director and testified that an individual being interviewed for a hand sander would not be precluded from employment solely because of an inability to climb. Additionally, Mr. Sheehan tours and observes other furniture facilities in the area as well as conversing with other Human Resource Directors at other furniture facilities. As a result of these observations and conversations, Mr. Sheehan is aware that some of these other facilities do not require their employees to climb in order to perform the hand sanding operations. In addition, Mr. Sheehan is also aware, through personal observation, that the hand sanders at one of defendant-employer's nearby facilities reach the units to be sanded not by climbing, but from platforms. These platforms can be reached by the employees either from steps or ramps.
9. In October 1996, Dr. Platt noted that plaintiff had returned to work, but recommended continuing with the restrictions previously imposed which were no working at unprotected heights and the avoidance of ladders.
10. On 22 January 1997, plaintiff reported to Dr. Platt that she had continued to work with his restrictions, which were made permanent as of that date. Dr. Platt clarified his restriction of working on unprotected heights to mean working on unprotected structures of three (3) feet or more. Dr. Platt opined that plaintiff would be able to ascend or descend one or two stairs. Additionally, on 22 January 1997, Dr. Platt opined that plaintiff had reached maximum medical improvement and assigned a ten percent (10%) permanent partial disability rating to her right foot. Dr. Platt recommended that plaintiff continue working in her position with defendant-employer. Furthermore, Dr. Platt strongly disagreed with Dr. Buchanan's recommendation to remove plaintiff from work. Dr. Platt opined that activity had a beneficial affect for people suffering from RSD.
11. Mr. Randy Adams is a vocational rehabilitation counselor and vocational evaluator who was retained by plaintiff to determine: (1) whether the current employment of plaintiff as a hand sander was suitable employment in light of the accommodation made with regard to the physical restriction of no climbing and working on unprotected heights imposed by Dr. Platt; and (2) whether the job of hand sander as normally performed in the national or local economy, requires the employee to climb or step as an essential job function.
12. Mr. Adams met with plaintiff for one and one-half (1 1/2) hours and did not observe the operations at defendant-employer's facility. Mr. Adams performed a labor market survey which consisted of review of the job classification of hand sander in the Dictionary of Occupational Titles, contacting furniture manufacturers in plaintiff's geographic region. Mr. Adams indicated there were twenty-five (25) furniture manufacturers in plaintiff's geographic region. Of the twenty-five (25), he contacted eight (8) who were willing to speak with him for the labor market survey. Mr. Adams found none of the eight (8) he contacted were able to state the job of the hand sander did not require some stepping up or climbing. However, Mr. Adams did not state in his report a distinction between climbing on pallets and stepping up one or more stairs, whether there were some barriers or guards on the elevated portions with the employers, or whether there was a distinction between pallets or platforms. In addition, Mr. Adams did not ask what type of furniture was being manufactured in these facilities to determine the height of the furniture on which the hand sander would be working.
13. Based upon his research, Mr. Adams opined that the modified hand sander job with defendant-employer which meets the restrictions imposed by Dr. Platt was not reasonably attainable in the local labor market and was therefore, not suitable employment for plaintiff.
14. Ms. Maggie Kelly was retained by defendants as an expert in the field of rehabilitation counseling and rehabilitation coordination. Ms. Kelly was to determine:
(1) whether the job being performed by plaintiff as a hand sander for defendant-employer was suitable employment, and;
(2) whether there was other work within plaintiff's geographic regions which would be considered suitable employment.
15. Ms. Kelly met with Mr. Sheehan, the plant nurse and plaintiff at defendant-employer's facility on 25 June 1998. Ms. Kelly was informed about the hand sander job as it was being performed by plaintiff. Ms. Kelly learned that plaintiff had not been required to climb to perform the job of hand sander before her 6 September 1994 injury because of a fear of heights. Ms. Kelly also observed plaintiff working and other employees performing work in this position. Plaintiff informed Ms. Kelly that she enjoyed her job. Plaintiff did not inform Ms. Kelly at any time she was speaking with her or observing her perform her job that she was experiencing any difficulty in performing the work assigned.
16. Based upon the available information and her research, Ms. Kelly opined that plaintiff's job, as she was performing it for defendant-employer, was a legitimate job and that the modification made by defendant-employer was minor. Ms. Kelly further opined that plaintiff would be able to secure a similar job within the local labor market. Ms. Kelly identified five (5) employers which would be willing to consider plaintiff for employment as a hand sander with the restrictions imposed by Dr. Pratt.
17. The testimony of Ms. Kelly is given greater weight than that of Mr. Adams in regards to the suitability of plaintiff's job as it was being performed for defendant-employer.
18. On 6 September 1994, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer.
19. The job of hand sander as it was being performed by plaintiff at the time of the hearing was suitable employment. This job was modified prior to her injury by accident and prior to any restrictions imposed by any physician. Furthermore, this modification was made because of plaintiff's own expressed fears of heights. Finally, as of the date of the hearing before the Deputy Commissioner, plaintiff continued to perform the duties of this position without difficulty and without any diminution in wages.
***********
The foregoing stipulations and findings of fact engender the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer on 6 September 1994. G.S. § 97-2(6).
2. The Industrial Commission Form 21 Agreement for Compensation, which was approved by the Commission on 1 December 1994, created the rebutable presumption of continued disability in plaintiff's favor. Kisiah v. W.R. Kisiah Plumbing,124 N.C. App. 72, 476 S.E.2d 434 (1996), disc. rev. denied, 345 N.C. 343,483 S.E.2d 169 (1997). Defendants successfully rebutted this presumption by presenting evidence that plaintiff returned to work in her former, permanent position at full time hours.Id.
3. The job of hand sander, as it was being performed by plaintiff for defendant-employer was suitable employment. G.S. § 97-32.
***********
Based upon the foregoing, the undersigned makes the following:
 AWARD
1. Plaintiff's claim under the law must be and is hereby DENIED.
2. Each side shall pay its own costs, except that defendants shall pay an expert witness fee in the amount of $125.00 to Mr. Randy L. Adams.
S/_____________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_____________ DIANNE C. SELLERS COMMISSIONER
S/_____________ RENEE C. RIGGSBEE COMMISSIONER